The Honorable _____

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN A. GLASSER, AS TRUSTEE OF THE
YELLOWSTONE CLUB LIQUIDATING
TRUST

        Plaintiff,

        v.

JESSICA T. BLIXSETH and JTB, LLC,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. _____

**PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

NOTE ON MOTION CALENDAR:
October 14, 2014

       Plaintiff Brian A. Glasser, as Trustee of the Yellowstone Club Liquidating Trust (the "Trust")

respectfully moves the Court for entry of a temporary restraining order and preliminary injunction

enjoining Defendants Jessica T. Blixseth and JTB, LLC, the Defendant's husband, Timothy L.

Blixseth, and their agents, servants, employees, independent contractors, attorneys, representatives,

affiliates, and those persons or entities in active concert or participation with them from directly or

indirectly (a) transferring, concealing, disposing of, assigning, hypothecating, encumbering, or

otherwise dissipating the membership interests in, or any remaining assets of, Western Air & Water,

LLC, by whomsoever held, including, without limitation, the yacht known as "The Piano Bar," and

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 1

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

any and all proceeds, products, offspring, rents, or profits of such membership interests or assets (the "Subject Assets"), (b) merging, consolidating, reorganizing, dissolving, liquidating, or changing in any way the structure or ownership of Western Air & Water, LLC, or (c) causing any entity owned or controlled by or affiliated with any of them, including any corporation, limited liability company, limited partnership, or trust, to transfer, conceal, dispose of, assign, hypothecate, encumber, or otherwise dissipate the Subject Assets or merge, consolidate, reorganize, dissolve, liquidate, or change in any way the structure or ownership of Western Air & Water, LLC, pending further order of this Court, until this action is resolved.

## PRELIMINARY STATEMENT

This action seeks to recover from the Defendants the Subject Assets that Mrs. Blixseth's husband, Timothy L. Blixseth ("Mr. Blixseth"), fraudulently transferred first to Desert Ranch LLLP, a Nevada limited liability limited partnership he controls, and, now, allegedly to his wife and her LLC, the Defendants herein. As alleged in the accompanying Verified Complaint initiating this action, Mr. Blixseth engaged in serial transfers of the Subject Assets with the actual intent, and as part of an elaborate scheme, as one Court has already expressly found, to hinder, delay or defraud his lawful creditors, including the Trust which now holds two judgments totaling more than $250 million against Mr. Blixseth.

The latest transfer of assets, this time to his wife or entities controlled by his wife, is but among the latest in a long line of fraudulent transfers and conduct designed to bilk the ultra-exclusive Yellowstone Mountain Club ski and golf resort and the entities that developed and ran it (collectively, the "Yellowstone Club" or the "Debtors"), all of which Mr. Blixseth established and controlled until just before the Debtors commenced their Chapter 11 cases, out of hundreds of millions of dollars of their assets. Mr. Blixseth initially diverted some $209 million in cash and tens

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT 84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 2

of millions of dollars of other assets from the Yellowstone Club in 2005.  The United States

Bankruptcy Court for the District of Montana (the "Montana Bankruptcy Court"), in a final judgment

entered in December 2012 and affirmed already once on appeal, found that these transfers violated

his fiduciary duties to the Debtors and constituted fraudulent transfers of the Debtors' assets

avoidable pursuant to provisions of the United States Bankruptcy Code and the Montana Uniform

Fraudulent Transfer Law.[1]

After absconding with the Debtors' cash and assets, Mr. Blixseth then engaged in a series of

transactions that the Montana Bankruptcy Court also expressly found constituted actual fraud—in an

elaborate scheme, he engineered a divorce agreement with his former wife dividing their assets and

then transferred all his then-remaining personal assets to Desert Ranch LLLP to shield his assets from

the inevitable litigation claims his prior acts would spawn.[2]  And since that time, he has also

embarked on a further, systematic asset dump out of Desert Ranch, including the sale of two Western

Air & Water assets (his private jet and his second boat), designed to finally deprive the Trust of any

recovery on its judgment as the Trust chased the money and other assets and got closer and closer to

Mr. Blixseth and Desert Ranch.  Particularly in the perspective of the two judgments from two

different courts the Trust has now obtained against Mr. Blixseth for more than $250 million relating

to the initial 2005 fraudulent transfers and the Trust's extensive collection activities, Mr. Blixseth's

latest asset transfer to his wife has all the earmarks of a classic eve-of-execution fraudulent transfer.

The need for injunctive relief in this case is not speculative or hypothetical.  It is omnipresent

and very real.  In addition to his long line of transfers and conduct already found to have been

---

[1]  *Blixseth v. Kirschner (In re Yellowstone Mountain Club, LLC)*, 436 B.R. 598 (Bankr. D. Mont. 2010) , *aff'd*, 2014 WL 1369363 (D. Mont., Apr. 7, 2014).

[2]  *Id.* at 664.

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 3

undertaken with actual intent to hinder, delay, or defraud his creditors, Mr. Blixseth has sold property and fully dissipated the proceeds thereof in willful and deliberate violation of an injunction.  For that, a Montana District Court found Mr. Blixseth in contempt and imposed severe penalties, an order the Court of Appeals just affirmed in full.  *See* Exhibits F, M, and N.[3]  And for that, the Montana Bankruptcy Court granted the Trust additional injunctive relief in December 2013 against Mr. Blixseth and Desert Ranch to prevent the further dissipation of their assets.  *See* Exhibits K and L.  In a deposition on the eve of the hearings to consider that injunctive relief, Mr. Blixseth claimed, however, under oath in a deposition that he had previously caused Desert Ranch to transfer the Subject Assets to his wife in April 2013.[4]

Let there be no doubt that, in the absence of immediate injunctive relief, the Blixseths will cause the subjects of this action to be sold or further transferred to deprive this Court of the ability to order any effective relief, to defeat this action, and to frustrate the Trust's continuing attempts to recover the Subject Assets that Mr. Blixseth has already fraudulently transferred at least twice and in the face and violation of an express injunction.  Indeed, during the Defendants' alleged tenure as the owner of the Subject Assets, Mr. Blixseth allegedly caused the sale of one Subject Asset[5] and has listed another for sale, indicating an intention to "contribute" the proceeds of the latter sale to another

---

[3]  References to Exhibits in this Motion are references to exhibits attached to the Declaration of Athanasios Basdekis filed in conjunction with this Motion.

[4]  *See* Exhibit I at pp. 78-79.  In connection with the entry of temporary and preliminary injunctive relief, the Trust requests that the Court direct the Defendants to produce to the Plaintiff documents evidencing the present ownership of the Subject Assets.  Such documentation is necessary to facilitate the Plaintiff's and the Court's ability to enforce the injunctive relief under and in accordance with Federal Rule of Civil Procedure 65(d)(1) and (d)(2).  Given Mr. Blixseth's penchant for producing heavily redacted copies of virtually every document he produces, the Trust requests specifically that the Court direct the production of unredacted copies.  Given the limited nature of the documents requested—those directed specifically at the acquisition and ownership of the Subject Assets—the production of unredacted copies will not p rejudice the Defendants.

[5]  Exhibit I at pp. 71, 75.

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 4

entity he controls so that he might save the couple's Medina, Washington mansion from foreclosure.[6] One can thus only hope given Mr. Blixseth's past conduct that the Blixseths will not cause the sale or transfer of the remaining Subject Assets even in the face of express injunctive relief from this Court, especially now that Mr. Blixseth has involved his wife in his illicit conduct.

Given the long and tortuous history of the assets that are the subject of this action in the hands of the Defendant's husband, this action cries out for immediate injunctive relief to prevent the perpetration of further fraudulent conduct designed to frustrate two separate federal court judgments to the continuing detriment of the Trust.

## STATEMENT OF FACTS

The pertinent and salient facts are set forth in the Verified Complaint in this action and the Declaration of Athanasios Basdekis and are incorporated herein as though set forth in full.

## ARGUMENT

**I.    The serial transfers of the Subject Assets to frustrate the Trust's efforts to recover those assets warrant the issuance of a preliminary injunction**

Both applicable law and the Federal Rules authorize this Court to issue injunctive relief to prevent the further transfer of the Subject Assets.  In seeking to recover the Subject Assets, the Trust sets forth claims under the Montana and Nevada Uniform Fraudulent Transfer Acts.  Both statutes expressly authorize the issuance of injunctive relief, including specifically prejudgment attachment and other provisional remedies, to prevent the further transfer of fraudulently transferred property. *See* Mont Code Ann. § 31-2-339(1); Nev. Rev. Stat. § 112.210.  Further, the Court of Appeals has

---

[6]  Complaint to Quiet Title and for Other Relief, *Kawish, LLC v. 1988 Prim Revocable Trust*, Case No. 14-2-18942-7 SEA (King County Superior Court, July 9, 2014), at ¶ 3.7, a copy of which was filed with this Court as an Exhibit to the Notice of Related Litigation Mr. Blixseth filed in *395 Lampe, LLC v. Kawish, LLC*, Case No. 2:12-cv-01503-RAJ (W.D. Wash., July 14, 2014) [Doc 154].

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 5

read Section 105(a) of the Bankruptcy Code[7] to authorize the issuance of injunctive relief to protect the assets of a debtor's estate.  *See Canter v. Canter (In re Canter)*, 299 F.3d 1150, 1155 (9th Cir. 2002).  Indeed, at least one court of appeals has authorized the use of Section 105(a) in precisely these kinds of circumstances to enter prejudgment relief against a transferee and the assets transferred to it to ensure that the estate may recover on its fraudulent transfer claims against that transferee.  *See Lautenberg Foundation v. Picard (In re Bernard L. Madoff Investment Securities, LLC)*, 512 Fed. Appx. 18, 2013 WL 616269 (2d Cir. 2013) at * 2 (affirming a preliminary injunction enjoining third-party suits against transferees "whose every asset (or the vast majority thereof) is claimed by the Trustee as a fraudulent transfer" to protect the trustee's ability to recover the fraudulent transfers on behalf of creditors).  And, finally, the Court of Appeals has held that Federal Rule of Civil Procedure 65 authorizes the issuance of both temporary restraining orders and preliminary injunctions barring the transfer of property that is the subject of recovery in a fraudulent transfer action.  *See Thomas, Head and Greisen Employees Trust v. Buster*, 95 F.3d 1449, 1456-57 (9th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997) (affirming entry of a preliminary injunction under Fed. R. Civ. P. 65 to preserve assets and monies previously found to have been the subject of fraudulent transfers).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011), *quoting Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20, 129 S. Ct. 366, 172 L. Ed. 2d 249 (2008).  Courts should "evaluate these factors via a 'sliding scale approach,' such that 'serious questions going to the merits' and a

---

[7]   Section 105(a) broadly states that "The [bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 6

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

balance of hardships that tips sharply towards the plaintiff can support the issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.'" *Arc of California v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014), *quoting Cottrell*, 632 F.3d at 1131, 1135. The decision to enter a preliminary injunction is committed to the discretion of the court, subject to review for abuse of discretion. *Id.*

The facts and circumstances of this case plainly warrant prejudgment injunctive relief to prevent the Defendants and Mr. Blixseth from further transferring the assets that are the subject of this fraudulent transfer action to the detriment of the Trust.

**A.    Based upon prior court findings as to Mr. Blixseth's penchant for fraudulently transferring property, the Trust has a very high likelihood of success on the merits**

"The irreducible minimum [for entry of a preliminary injunction] . . . is that the moving party demonstrate a fair chance of success on the merits or questions serious enough to require litigation." *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006), *quoting Sports Form, Inc. v. United Press International, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982). Mr. Blixseth's prior, proven acts of fraudulent and even contemptuous transfers, as expressly found by two different courts, establish far more than a fair chance of success on the merits. Indeed, his subsequent transfer of the Subject Assets *to his wife* just months after entry of a $40-plus million judgment that allegedly bankrupted him, arouses deep suspicion as to the bona fides of the transfer.

This action seeks the recovery of assets transferred in at least two separate fraudulent transfers under two separate, but related theories:

- In the first transfer, Mr. Blixseth transferred the Subject Assets, along with all or substantially all his other personal assets, to Desert Ranch as part of his overarching "creditor protection" plan just days before the Debtors commenced

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 7

their bankruptcy cases.  In Count I of the Verified Complaint, the Trust seeks to recover the Subject Assets from the Defendants, as *subsequent* transferees of the assets that Mr. Blixseth fraudulently transferred to Desert Ranch.

- In the second transfer, Mr. Blixseth, who retained full and complete control over Desert Ranch and Western Air & Water despite the aforementioned transfers, caused Desert Ranch to transfer the Subject Assets to the Defendants.  In Count II, the Trust seeks to recover the Subject Assets from the Defendants, as the *initial* transferees of the assets that Desert Ranch fraudulently transferred to the Defendants.

In evaluating the Trust's likelihood of success on the merits on these two claims, it is important to recognize five key facts.  First, the Trust may recover the Subject Assets from the Defendants separately under *either* theory.  Second, a key element of each claim is *Mr. Blixseth's* fraudulent intent in making or causing the transfers, not Mrs. Blixseth's fraudulent intent in accepting the last of them.[8]  Third, the Montana Bankruptcy Court has already expressly found and determined that Mr. Blixseth transferred his personal assets (which included the Subject Assets) to Desert Ranch *with actual intent to hinder, delay, or defraud his creditors*, including those who became beneficiaries of the Trust, thus giving the Trust a *prima facie* claim to recover the Subject Assets from the Defendants as subsequent transferees.  Fourth, Mr. Blixseth has, despite the transfer of his assets to Desert Ranch, engaged in other further transfers of assets out of Desert Ranch and Western Air & Water.  Fifth, the Montana District Court found that one of those transfers, orchestrated in direct contravention of an express, stipulated-to injunction, represented part of a deliberate and

---

[8] As discussed below, Mrs. Blixseth's state of mind—in particular, her good faith or lack thereof—is relevant only to a defense the Defendants may make under the fraudulent transfer statutes.

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 8

calculated broader course of conduct to deprive that Court of its ability to order effective relief and frustrate the Trust's efforts to recover those assets.  Taken together, these facts raise obvious, and very serious, questions going to Mr. Blixseth's subsequent transfer of the Subject Assets to his wife and go well beyond demonstrating a strong likelihood of success to establish "serious questions going to the merits" of the Trust's claims relating thereto for purposes of applying the "sliding scale approach" to this Motion.

The Montana Bankruptcy Court could hardly have been clearer in its findings as to Mr. Blixseth's fraudulent intent in transferring his assets to Desert Ranch in the summer of 2008 on the eve of the Debtors' bankruptcy filings:

> [As] Blixseth and his advisors were contemplating the financial demise of the Yellowstone Club and Edra . . .[,] they were developing a plan to shield Blixseth from the fallout.  Blixseth's plan involved not only obtaining releases from the Debtors, it involved the creation of Desert Ranch LLLP, a structure referred to by his attorney as a "personal Berkshire Hathaway" that provided "general creditor protection."  . . .  As admitted by his own lawyer, one of the purposes of [the Desert Ranch] structure is to remove assets from the reach of creditors. Virtually all of Blixseth's assets were transferred into this vehicle. . . .

> The Desert Ranch structure was an integral part of Blixseth's plan to shield himself from the consequences of his breaches of fiduciary duty and fraudulent transfers in connection with the Debtors.

> Blixseth's fraudulent intent could not be more clear.

436 B.R. at 664.  In fact, based upon that finding, the Montana Bankruptcy Court recently ruled that the Trust had established "a strong likelihood of success on the merits" of its fraudulent transfer claims seeking to recover the assets, including the Subject Assets, Mr. Blixseth had transferred to Desert Ranch.  Exhibit K at p. 9.  At a minimum, the Montana Bankruptcy Court's findings establish a very high likelihood of success on the Trust's claim in Count I of the Verified Complaint, in which

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 9

the Trust seeks to recover property Mr. Blixseth fraudulently transferred to Desert Ranch from the Defendants simply as subsequent transferees of the fraudulently transferred property.

The Montana District Court's contempt decision in December 2013 establishes still more serious and troubling questions about Mr. Blixseth's continuing course of conduct even after the 2008 Desert Ranch transfers.  As noted, since transferring his personal assets to Desert Ranch to shield them from his creditors, Mr. Blixseth has continued to exercise full and complete control over their disposition and has not hesitated to further transfer those assets, as he did here with the Subject Assets, in a continuing effort to frustrate the Trust's recovery efforts.  Among the assets Mr. Blixseth caused the Debtors to transfer first to himself and then to Desert Ranch was the Tamarindo resort in Mexico.  Shortly after the Trust sued Mr. Blixseth to recover Tamarindo, Mr. Blixseth voluntarily entered into the stipulated injunction agreeing not to sell, transfer, or otherwise dispose of Tamarindo.  Exhibit G.  Nevertheless, while the Tamarindo litigation proceeded, Mr. Blixseth secretly sold Tamarindo and fully expended the proceeds of that sale in violation of the stipulated injunction, without ever advising the Trust or the Court even as he pursued a belated effort to dissolve the injunction.  Examining Mr. Blixseth's conduct, the Montana District Court held Mr. Blixseth in contempt for "a *deliberate, calculated course of conduct* . . . culminating in the transfer of the Tamarindo Property in direct contravention of [the injunction]" and directed the imposition of "extreme sanctions."  Exhibit F at pp. 2-3 (emphasis added).  Indeed, in finding Mr. Blixseth in contempt, the Montana District Court further stated, "I have been privileged to be a part of the bench of this Court for some 12-plus years.  I had the privilege of practicing law in this state for something

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 10

over 30 years before that, and never in the experience of this Court have I seen such what I take to be a deliberate pattern of conduct attempting to deceive this Court in carrying out the functions assigned to it." Exhibit M at pp. 43-44. Among other things, the Montana District Court awarded judgment to the Trust upon its fraudulent transfer claims against Mr. Blixseth and another Desert Ranch entity, Tamarindo, LLC, for the fraudulent transfer of the Tamarindo resort, *see* Exhibit F at p. 3, a contempt sanction the Court of Appeals explicitly upheld in its recent decision affirming the Montana District Court's contempt order, *see* Exhibit N. Particularly under the facts and circumstances surrounding its entry, that default judgment, too, for Mr. Blixseth's and Desert Ranch's subsequent fraudulent transfer of assets with the actual intent of hindering, delaying, or defrauding the Trust (*see* Exhibit E), helps to establish the Trust's likelihood of success on the merits of this action. *See, e.g., Howard v. Lewis*, 905 F.2d 1318 (9th Cir. 1990) ("a default judgment . . . *is* considered to be a determination on the merits for purposes of res judicata") (emphasis in original), *citing Morris v. Jones*, 329 U.S. 545, 550-51, 67 S. Ct. 451, 455-56, 91 L. Ed. 488 (1947).

The Montana Bankruptcy Court's express finding that Mr. Blixseth engaged in actual fraud in transferring his assets (which include the Subject Assets) to Desert Ranch, the Montana District Court's subsequent determination that Mr. Blixseth has continued to engage in a deliberate course of conduct involving the subsequent transfer of Desert Ranch's assets with actual intent to deceive that Court and frustrate the Trust's efforts to chase down the assets, and the entry of a default judgment for fraudulent transfers with actual intent vest the Trust's fraudulent transfer claims vis-à-vis the Defendants and the Subject Assets with a very high likelihood of success.

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT 84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 11

Indeed, given Mr. Blixseth's apparent and fairly obvious actual intent to hinder, delay, or defraud the Trust in further transferring the Subject Assets to the Defendants, the Defendants' only potential defense to the Trust's recovery of the Subject Assets on either theory is that they constitute good faith transferees who took for value under the uniform fraudulent transfer laws of Montana and Nevada. *See* Mont. Code Ann. § 31-2-340(2)(b); Nev. Rev. Stat § 112.220. Here, again, however, the facts and circumstances give rise to very serious doubts as to the Defendants' ability to establish any defense as a good faith transferee for value of the Subject Assets: whether or not the Defendants can affirmatively prove that they gave value for the Subject Assets (something the Trust very seriously doubts), they simply cannot establish that they took the transfers in good faith. It bears emphasis that the Defendants bear the burden of proof on both issues. *See Wolkowitz v. Beverly (In re Beverly)*, 374 B.R. 221, 239 (9th Cir. BAP 2007), *aff'd in part, rev'd in part on other grounds*, 551 F.3d 1092 (9th Cir. 2008). Further, the spousal relationship between transferor and transferee leads inevitably to heightened suspicion that the transfer was, in fact, fraudulent. *See First National Bank of Fairbanks v. Enzler*, 537 P. 2d 517, 525 (Alaska 1975). Indeed, a debtor's transfer of an asset to his wife (or other relatives) constitutes a "badge of fraud" under both the Montana and Nevada uniform fraudulent transfer laws. *See* Mont. Code Ann. § 31-2-333(2); Nev. Rev. Stat. § 112.180(2). Moreover, critical to the determination of whether any transferee constitutes a good faith transferee is the transferee's *objective* lack of knowledge of the fraudulent nature of the transfer. *See Hayes v. Palm Seedlings Partners-A (In re Agricultural Research and Technology Group, Inc.)*, 916 F.2d 528, 535-36 (9th Cir. 1990); *Beverly*, *supra*. Given the substantial judgment (following a trial at which

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 12

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

Mrs. Blixseth was present at times in the courtroom), the extensive litigation in which Mr. Blixseth

has been mired over the past five years, in some of which Mrs. Blixseth has, putatively, actively

participated, and multiple claims and judgments of fraudulent transfer, both constructive and actual,

by Mr. Blixseth and various entities he controls of a variety of assets, including specifically the

Western Air & Water assets, all of which Mrs. Blixseth (and therefore her LLC) fully knows, the

Defendants can hardly claim lack of knowledge of the potential voidability of the transfer.

Particularly in light of the facts and circumstances of this case as found and determined by the

Montana Bankruptcy and District Courts, the Trust has far more than a "fair chance of success" on

the merits of this action that, indeed, rises to the level of very serious questions on the merits.

**B.      Further disposition of the Subject Assets will irreparably injure the Trust**

The Ninth Circuit Court of Appeals has authorized the issuance of asset-freeze injunctions in

appropriate circumstances.  *See Johnson v. Courturier,* 572 F.3d 1067, 1085 (9th Cir. 2009), *citing*

*In re Focus Media Inc.*, 387 F.3d 1077 (9th Cir. 2003), *cert. denied*, 544 U.S. 923 (2005),

*Connecticut General Life Insurance Co. v. New Images of Beverly Hills*, 321 F.3d 878 (9th Cir.

2003), and *FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999).  "A party seeking an asset

freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover

monetary damages, if relief is not granted." *Johnson v. Courturier,* 572 F.3d at 1085.  Given Mr.

Blixseth's admitted continuing control over the Subject Assets,[9] the facts and circumstances of the

---

[9]  It bears emphasis that the fraudulent transfer laws vest the defrauded creditors with an equitable interest in the
fraudulently transferred property.  *See, e.g., American National Bank of Austin v. MortgageAmerica Corp. (In re
MortgageAmerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir. 1983) ("The transferee may have colorable title to the property,

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 13

1   instant case, with two separate judicial determinations of fraudulent and contemptuous conduct in the

2   transfer of assets, plainly establish a severe threat that the Blixseths will cause the Defendants to

3   transfer or dissipate the Subject Assets resulting in irreparable injury to the Trust.

4        Mr. Blixseth's conduct—serial transfers of assets with actual intent to defraud, engaging in a

5   broad scheme to shield his assets to thwart creditor claims, and continuing asset transfers, including

6   specifically the Subject Assets, even in willful contempt of an injunction—evidences the

7   extraordinary lengths to which Mr. Blixseth will go to completely frustrate and defeat the Trust's

8   efforts to recover the assets fraudulently transferred out of the Debtors and Desert Ranch and deprive

9   the Courts of any ability to fashion effective relief.  Inasmuch as he and his wife retain full control

10  over the management of the Subject Assets, the risk that they will transfer or even fully and finally

11  dissipate the Subject Assets is clear and ever-present.  What makes that risk rise to the level of

12  irreparable injury is the fact that Mr. Blixseth has stated over and over again in pleadings and in

13  testimony that he and Desert Ranch have no other real assets besides some lawsuits.  *See* Transcript

14  of Proceedings:  Motion Hearing, *Glasser v. Blixseth (In re Yellowstone Mountain Club, LLC)*, Case

15  No. 13-68-BU (D. Mont., Dec. 23, 2013) at pp. 21-22.  Indeed, the extraordinary deterioration of his

16  substantial assets was only recently the subject of a lengthy article in *Seattle Weekly.  See* Anderson,

17  Rick, "How to Lose $1 Billion," *Seattle Weekly* (Sept. 30, 2014) (available online at

18  http://www.seattleweekly.com/news/954780-129/how-to-lose-1-billion).  Given the Trust's inability

---

22  but the equitable interest—at least as far as the creditors (but not the debtor) are concerned—is considered to remain in
23  the debtor so that creditors may attach or execute judgment upon it as though the debtor had never transferred it.")  The
    fact that the Trust has an equitable interest in that property also establishes its right to seek an asset-freeze injunction.  *See*
    *Ellipso, Inc. v. Mann*, 480 F.3d 1153 (D.C. Cir. 2007), *citing Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund,*
24  *Inc.*, 527 U.S. 308, 119 S. Ct. 1961, 144 L. Ed. 2d 319 (1999).

25                                                              L. Grant Foster
                                                                HOLLAND & HART LLP
26                                                              222 South Main St., Suite 2200
                                                                Salt Lake City, UT  84101
27  MOTION FOR TEMPORARY RESTRAINING          Telephone: (801) 799-5800
    ORDER AND PRELIMINARY INJUNCTION – 14    Facsimile: (801) 799-5700
28

to find other assets (*see* Basdekis Declaration at ¶ 31), the yacht, the only known tangible Subject Assets, represents, in fact, the Trust's last currently *known* hope of recovering any of the $286 million Mr. Blixseth looted from the Yellowstone Club and for which the Trust now has two judgments totaling more than $250 million.  And, in the absence of immediate injunctive relief, it is certainly likely that Mr. Blixseth will engineer the transfer or sale his last remaining known asset and appropriate its proceeds in a final and perhaps decisive blow to the Trust's ability to recover the Debtors' assets or realize on its judgments, with uncertain hope of actually recovering the value of these assets from the Defendants if a judgment were rendered against them individually.

The Trust also has substantial reason to question the Defendants' complicity in Mr. Blixseth's efforts to shield the assets from the Trust.  These are not the only Desert Ranch assets Mr. Blixseth, allegedly, has conveyed to his wife,[10] and this would not be the first time that, at least in name, Mrs. Blixseth has participated or figured in her husband's litigation efforts with other litigations.  Indeed, according to Mr. Blixseth, his wife has taken over the legal defense relating to claims that are the subject of litigation in this very Court.[11]

The Trust submits that the facts and circumstances establish a severe threat of irreparable injury in the absence of immediate injunctive relief preventing the further transfer of the fraudulently transferred assets that are the subject of this action.

---

[10]  Mr. Blixseth allegedly transferred Desert Ranch's beneficial ownership in Kawish, LLC and Little Bear Development LLC to his wife as well.  Deposition at pp. 39, 56-57.  Mr. Blixseth, however, remains Kawish's manager.  *Id.* at p. 40.

[11]  Mr. Blixseth testified that his wife took over the legal defense Kawish LLC has waged for years with Wayne Prim.  Deposition at p. 68.  The litigation pending before this Court is styled *395 Lampe, LLC v. Kawish, LLC*, Case No. 2:12-cv-01503-RAJ.

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 15

C.   **The balance of hardships tips decidedly in favor of the Trust**

In contrast to the irreparable injury the further transfer and dissipation of the Subject Assets would impose upon the Trust, particularly in depriving it of Mr. Blixseth's last known assets, the requested injunctive relief would impose little, if any, real hardship upon the Defendants.  It bears emphasis that, in seeking injunctive relief, the Trust simply asks this Court to enjoin further transfer of fraudulently transferred assets and properties that are the subject of this action *pending further order of the Court*.  If the Defendants wish to sell or otherwise transfer the Subject Assets, they need only come to this Court first so that this Court can ensure that the transfer will not prejudice the rights and interests of the Trust or deprive this Court of the ability to grant effective relief in this action.

D.   **Entry of injunctive relief would further the public interest in the prevention of fraud and the sanctity of the judicial process**

"[T]he public interest analysis in preliminary injunction cases is focused on the impact on non-parties rather than parties."  *Southwest Voter Registration Education Project v. Shelley*, 344 F.3d 882, 907 (9th Cir.), *rev'd on other grounds on rehearing en banc*, 944 F.3d 914 (9 Cir. 2003). "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be 'at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009), *quoting Bernhardt v. L.A. County*, 339 F.3d 920, 931 (9th Cir. 2003).  As the preliminary injunction requested here affects only the Defendants (and their representatives), the public interest certainly does not cut against entry of the injunction.  On the other hand, however, injunctive relief will, in this case, directly serve two important public purposes.

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 16

First, injunctive relief would serve to halt Mr. Blixseth's continuing fraudulent conduct. As noted, Mr. Blixseth has twice fraudulently transferred the assets the Trust seeks to freeze, once to Desert Ranch with actual intent to hinder, delay, or defraud the Trust, as previously expressly found and determined by the Montana Bankruptcy Court, and now to his wife. With Mr. Blixseth, at least through his wife and her LLC, in continuing control of the twice fraudulently transferred assets, the public interest would be served by entering an injunction to prevent further transfers of the Subject Assets with actual intent to defraud his creditors. *See F.T.C. v. Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999) (noting the public interest in preserving the proceeds of a fraudulent scheme); *Ellipso, Inc. v. Mann*, 2005 WL 5298646 at *4 (D.D.C. 2005), *aff'd*, 480 F.3d 1153 (D.C. Cir. 2007) (issuing a preliminary injunction based upon the public interest in preventing fraud).

Second, injunctive relief would serve to further the enforcement of two federal-court judgments, a matter in which the public has an obvious interest. *See State Farm Mutual Automobile Ins. Co. v. American Rehab and Physical Therapy, Inc.*, 376 Fed. Appx. 182 at *2 (3d Cir. 2010). Indeed, at bottom, this action is a necessary follow-up action to the enforcement and collection of the Trust's judgments against Mr. Blixseth. On the eve of the Debtors' imminent bankruptcy filing and in the face of the potential claims the Trust ended up prosecuting to judgment, Mr. Blixseth transferred his personal assets to Desert Ranch and then, just months after entry of the Trust's judgment and with the Trust's other litigation, including a suit against Desert Ranch to recover the fraudulently transferred property and a contempt proceeding, then pending, transferred some of the same assets out of Desert Ranch to his wife as part of a plan to deprive the Trust of any recovery on account of its Judgment. Properly viewed, Mr. Blixseth's transfers both to Desert Ranch and his wife are part of his grand scheme—the deliberate and calculated course of conduct, in the words of the Montana District Court—to evade the Trust's claims and judgment.

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT 84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 17

Under these circumstances, the Trust submits that the public interest outweighs any hardship upon the Defendants and strongly supports the issuance of the requested injunctive relief in this case. "Under this Circuit's precedents, 'when a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight.'" *F.T.C. v. Affordable Media*, 179 F.3d 1229, 1236 (9th Cir. 1999), *quoting F.T.C. v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989).  The public interest in halting Mr. Blixseth's fraudulent conduct and the enforcement of $250-plus million in federal-court judgments weighs heavily in favor of granting the requested injunctive relief.

II.   **Mr. Blixseth's continuing control, past history, and steadfast intent subjects the Trust to substantial risk that the Defendants will dispose of the Subject Assets immediately upon the commencement of this action resulting in immediate and irreparable loss to the Trust**

The Trust acknowledges its obligation under Federal Rule of Civil Procedure 65(b)(1) to "show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  The very commencement of this action constitutes a significant increase in the Trust's efforts to collect its judgment from Mr. Blixseth.  Although the Trust has engaged in extensive litigation in multiple forums with Mr. Blixseth and his business associates, including his son with whom he was engaged in business, this action represents the first time the Trust (or to the Trust's knowledge any other entity) has commenced litigation against Mr. Blixseth's wife.  Given Mr. Blixseth's past history and the fact that the litigation has now hit the doorstep of his marital home, the Trust has grave concerns that Mr. Blixseth will quickly act, especially in the absence of injunctive relief, to attempt to frustrate the Trust's claims against his wife by quickly disposing of his last remaining assets, secreting the proceeds thereof, and completing his claims of poverty.

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 18

Under the unique facts and circumstances of this case, the Trust submits that it is subject to a substantial threat of immediate and irreparable loss absent the immediate entry of injunctive relief without the provision of prior notice to the Defendants and Mr. Blixseth.

**III.    Even though he is not a party to this action, this Court may enjoin Mr. Blixseth from transferring the Subject Assets**

Federal Rule of Civil Procedure 65 explicitly contemplates the provision of injunctive relief against non-parties, including, specifically, the officers, agents, servants, employees, and attorneys for a party and any other person in active concert or participation with a party or any such person. Fed. R. Civ. P. 65(d)(2); *see Irwin v. Mascott*, 370 F.3d 924, 931 (9th Cir. 2004) ("when an injunction is addressed to a non-party and he is given notice of the injunction, Rule 71 permits a district court to use 'the same processes for enforcing obedience to the order as if [he were] a party,' such as holding him in contempt for violating it.").  Rather than require prior notice of the entry of the injunctive relief, the Rule contemplates the provision of actual notice of the entry of the injunction.  Given all the circumstances of the instant case, the case for specifically identifying Mr. Blixseth in the injunction is particularly strong.  Mr. Blixseth, allegedly and admittedly, served as the manager of the limited liability company that owns the Subject Assets even after the alleged transfer and, accordingly and reputedly, serves in a representative capacity vis-à-vis the Defendants and would, at a minimum, have every incentive to act in active concert or participation with the Defendants, in selling the assets subject to the injunction as contemplated under Rule 65(b)(2).  It was he, after all, who caused the Subject Assets to be transferred to his wife in the first place and, even after the transfer, he remains in control of the disposition of yacht he continues to use and enjoy.

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 19

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

**NOTICE**

In accordance with the local rules of this Court, the Plaintiff has served the Verified Complaint and all motion papers on the Defendants and Mr. Blixseth contemporaneously with the filing of this Motion.  A certificate of service is attached hereto.  The Plaintiff has, moreover, provided copies of the Verified Complaint and the motion papers to the attorneys who currently represent the Defendants, Mr. Blixseth, and one of their related entities, Kawish LLC, in other litigation currently pending before this Court.  In addition, the Plaintiff has provided telephonic and email notice of this motion to those attorneys.

**CONCLUSION**

The Court should enter a temporary restraining order and preliminary injunction in the form submitted with this Motion enjoining the Defendants, Mr. Blixseth, and their agents, servants, employees, independent contractors, attorneys, representatives, affiliates, and those persons or entities in active concert or participation with them from directly or indirectly (a) transferring, concealing, disposing of, assigning, hypothecating, encumbering, or otherwise dissipating the Subject Assets, (b) merging, consolidating, reorganizing, dissolving, liquidating, or changing in any way the structure or ownership of Western Air & Water, LLC, or (c) causing any entity owned or controlled by or affiliated with any of them, including any corporation, limited liability company, limited partnership, or trust, to transfer, conceal, dispose of, assign, hypothecate, encumber, or otherwise dissipate the Subject Assets or merge, consolidate, reorganize, dissolve, liquidate, or change in any way the structure or ownership of Western Air & Water, LLC, pending further order of this Court, until this action is resolved, and requiring them to promptly produce documentation as to the current ownership of the Subject Assets, and grant the Trust such other and further relief as is just.

Dated this 14th day of October 2014.

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ L. Grant Foster*
L. Grant Foster #18903
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700
E-mail: gfoster@hollandhart.com

Marc R. Weintraub
Kevin W. Barrett (*pro hac vice application forthcoming*)
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555 (phone)
(304) 342-1110 (fax)
mweintraub@baileyglasser.com
kbarrett@baileyglasser.com

*Attorneys for Brian A. Glasser, Trustee of The
Yellowstone Club Liquidating Trust*

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 21

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that, on October 14, 2014, copies of the Plaintiff's Motion for a temporary restraining order and preliminary injunction, the associated proposed temporary restraining order, the Declaration of Athanasios Basdekis in support of the Plaintiff's Motion, and the Verified Complaint initiating this action have been or will be served contemporaneously with the filing thereof upon the following people as indicated below:

Paul E. Brain (by telephonic notice and email transmission)
Brain Law Firm PLLC
1119 Pacific Ave Suite 1200
Tacoma, WA 98402
Phone:  253-327-1019
pbrain@paulbrainlaw.com

Donald A. Bailey (by telephonic notice and email transmission)
James W. Shafer (by telephonic notice and email transmission)
Shafer & Bailey
1218 3rd Ave Suite 1808
Seattle, WA 98101
Phone:  206-682-4802
donald.bailey@shaferbailey.com
jameswshafer@questoffice.net

Jessica T. Blixseth (by overnight delivery)
1605 73rd Avenue
Medina, WA 98039

JTB, LLC (by overnight delivery)
c/o Jessica Blixseth, Its Registered Agent
1605 73rd Avenue
Medina, WA 98039

Timothy L. Blixseth (by overnight delivery)
1605 73rd Avenue
Medina, WA 98039

*/s/ Kevin W. Barrett*

L. Grant Foster
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION – 22