HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN A GLASSER, AS TRUSTEE OF THE YELLOWSTONE CLUBE LIQUIDATING TRUST,

Plaintiff,

v.

JESSICA T. BLIXSETH and JTB, LLC,

Defendants.

CASE NO. C14-1576 RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on the motion (Dkt. # 2) of plaintiff Brian A. Glasser, as trustee of the Yellowstone Club Liquidating Trust (the "Trust"), for a temporary restraining order and preliminary injunction. The Trust has served the motion and supporting documents upon defendants, Jessica T. Blixseth and JTB, LLC, along with Mr. Timothy L. Blixseth, a person alleged to be acting in concert with defendants. Dkt. # 2, p. 20-22. Defendants have not filed a response and the deadline to do so has

ORDER- 1

passed. *See* Local Civ. R. *See* Local Civ. R. 65(b)(5) ("Unless the court orders otherwise, the adverse party must file its response, if any, within forty-eight hours after the motion is filed."); Local Civ. R. 7(b)(2) ("[I]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.").

For the reasons stated below, the court GRANTS the motion and enters a TRO with terms as stated at the conclusion of this order.

## II. BACKGROUND

In the 1990s, Timothy Blixseth developed the Yellowstone Mountain Club in Montana. Dkt. 1, ¶ 1. In 2005, Yellowstone and its affiliated entities (collectively "Yellowstone") borrowed $375 million from Credit Suisse and a group of institutional lenders. *Id.*, ¶ 2. Upon disbursement of the loan, Mr. Blixseth diverted $209 million into his personal accounts. *Id.*, ¶ 3. Over the next few years, Mr. Blixseth transferred additional assets, valued at tens of millions of dollars, from Yellowstone to himself. *Id.*, ¶ 4.

In 2008, Yellowstone filed for bankruptcy. *Id.*, ¶ 8. Just before the filing, however, Mr. Blixseth created Desert Ranch LLLP ("Desert Ranch"), a Nevada limited liability limited partnership. *Id.*, ¶ 5. He then transferred substantially all of his assets to Desert Ranch. *Id.*, ¶ 6. The assets he transferred to Desert Ranch included his ownership interest in and the assets of another entity, Western Air & Water, LLC ("Western Air"), an Oregon limited liability company. *Id.*, ¶ 7. Among the assets of Western Air is a 156-foot yacht known as "The Piano Bar." *Id.* The assets of Western Air (including the yacht) are the subject of this action.

Yellowstone's creditors challenged the transfers made by Mr. Blixseth and sought to have them set aside. *Id.*, ¶ 8. On June 2, 2009, the United States Bankruptcy Court for the District of Montana (the "Montana Bankruptcy Court") confirmed the bankruptcy

plan and formed the Yellowstone Club Liquidating Trust ("the Trust") to, among other things, litigate the creditors' fraudulent transfer claims against Mr. Blixseth and the entities that he owns or controls. *Id.*, ¶ 9. The trustee of the Trust is the plaintiff in this action.

The trustee has pursued three relevant adversary proceedings before the Montana Bankruptcy Court. Dkt. # 7. The first adversary proceeding, Case No. 08-61570-11, Adv. Proc. No. 09-14 (Bankr. D. Mont.), sought to set aside Mr. Blixseth's transfer of certain assets from Yellowstone to himself, (the "Blixseth action"). This proceeding was resolved in December 2012 and resulted in a final judgment against Mr. Blixseth for $41 million. *Id.*, ¶ 10. That judgment remains unpaid. *Id.*, ¶ 31.

The second adversary proceeding, Case No. 08-61570-11, Adv. Proc. No. 09-64 (Bankr. D. Mont.), sought to set aside Mr. Blixseth's transfer of a Mexican resort called the Tamarindo (the "Tamarindo action"). The resort appears to have been an asset of Yellowstone, which Mr. Blixseth transferred to himself (and his related entities). This proceeding is still pending. *Id.*, ¶¶ 7, 14.

The third adversary proceeding, Case No. 08-61570-11, Adv. Proc. No. 10-15 (Bankr. D. Mont.), sought to set aside Mr. Blixseth's transfer of assets from himself (assets which allegedly used to belong to Yellowstone) to Desert Ranch (the "Desert Ranch action"). This proceeding is also still pending. *Id.*, ¶ 7, 11.

After filing the Tamarindo and Desert Ranch actions, the Trust separately moved in each adversary proceeding for entry of a preliminary injunction prohibiting Mr. Blixseth from further transferring the assets subject to each of those actions. *Id.*, ¶ 15. At that point in time, Western Air (including the yacht) belonged to Desert Ranch. *Id.*, ¶ 13.

The Montana Bankruptcy Court entered an injunction in the Tamarindo action prohibiting the sale of the resort, but initially held that a separate injunction in the Desert Ranch action was unnecessary. *Id.*, ¶¶ 16, 17. Mr. Blixseth, thereafter, violated the injunction in the Tamarindo action and sold the resort. *Id.*, ¶ 18. He also caused Desert

ORDER- 3

Ranch to transfer the assets of Western Air (including the yacht) to his wife, Jessica. *Id.*, ¶ 21; Dkt. # 3-9, pp. 79-80.

The Montana Bankruptcy Court held Mr. Blixseth in contempt for the sale of the Tamarindo resort finding that he had engaged in "a deliberate, calculated course of conduct…in direct contravention of the [injunction]" and directed the imposition of "extreme sanctions." Dkt. # 3-6. The court ultimately issued a contempt sanction of more than $13 million against Mr. Blixseth. *Id.*

Although the Montana Bankruptcy Court later entered an injunction in the Desert Ranch action, the assets of Western Air (including the yacht) had already been transferred to Mr. Blixseth's wife (or JTB, LLC, an entity in which his wife is the sole member). Dkt. # 3, ¶ 23; Dkt. ## 3-11, 3-12.

This brings us to the present action. The trustee seeks to set aside the transfer of Western Air's assets. According to the trustee, the yacht is the only remaining tangible asset available to satisfy the judgments entered against Mr. Blixseth.[1] Dkt. # 2, p. 15; Dkt. # 3, ¶ 31. Mr. Blixseth testified that he believed Western Air would probably sell the yacht. Dkt. # 3-9, p. 74.

It is unclear whether the assets of Western Air are currently owned by Mr. Blixseth's wife, in her individual capacity, or if the assets are owned by the entity she controls, JTB, LLC.[2] Both are named in the complaint. The complaint asserts two alternative theories for relief: (1) Count I alleges that Jessica Blixseth and JTB, LLC are subsequent transferees of the Western Air assets fraudulently transferred by Mr. Blixseth

---

[1] In addition to the other judgments entered against him, the United States District Court for the Central District of California recently entered a judgment against Mr. Blixseth for more than $219 million. Dkt. # 3-15, Case No. 11-cv-8283 GAF.

[2] Although Mr. Blixseth's testimony indicated that Desert Ranch transferred the assets to his wife, the records of the Oregon Secretary of State reveal that Western Air is owned by JTB, LLC.

to Desert Ranch; Count II alleges that Jessica Blixseth and JTB, LLC are initial transferees of the Western Air assets fraudulently transferred to them by Desert Ranch.

## III. ANALYSIS

To obtain preliminary injunctive relief, the Trust must "establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008). The standard for a temporary restraining order is substantially the same. *ProtectMarriage.com - Yes on 8 v. Courage Campaign*, 680 F. Supp. 2d 1225, 1228 (E.D. Cal. 2010) (citing *Winter*); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical").

### A. Likelihood of Success on the Merits

The court need not examine the Trust's likelihood of success on all of its claims, but rather any claim sufficient to justify the injunctive relief sought. The court chooses to focus on Count II of the complaint which seeks to recover the Western Air assets from Jessica Blixseth and JTB, LLC as initial transferees of the assets transferred to them by Desert Ranch.

The Trust contends that Nevada law applies to Count II because Desert Ranch is an entity organized and existing under Nevada law. Because defendants failed to file a response, the court will presume for purposes of this motion that defendants do not dispute the Trust's choice of law. [3]

---

[3] To the extent Washington law may apply, the court sees no conflict between RCWA § 19.40.041 and N.R.S. § 112.180. *See Patton v. Cox*, 276 F. 3d 493, 495 (9th Cir. 2002) ("A federal court sitting in diversity applies the forum state's choice of law rules."); *see also Erwin v. Cotter Health Ctrs.*, 161 Wash. 2d 676, 692 (2007) ("When parties dispute choice of law, there must be an actual conflict between the laws or

Under Nevada Revised Statute section 112.180, a transfer is fraudulent if the debtor made the transfer with the actual intent to hinder, delay or defraud any creditor of the debtor. N.R.S. § 112.180(1)(a). In determining "actual intent" consideration may be given to the following factors, among others: "(a) the transfer or obligation was to an insider, (b) the debtor retained possession or control of the property transferred after the transfer…(d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit…"[4] These factors are considered "badges of fraud" and the confluence of several of these "badges" can constitute evidence of actual intent to defraud. *In re Acequia, Inc.*, 34 F.3d 800, 805 (9th Cir. 1994).

Several badges of fraud appear to be present in the Western Air transfer. Mr. Blixseth testified that he was the manager of Desert Ranch and that he authorized the transfer of Western Air to his wife, an "insider" as defined by section 112.150. Dkt. # 3-9, pp.79-80. Although the Oregon Secretary of State's records show that Western Air was transferred to Jessica Blixseth's entity, JTB, LLC, that makes little difference. Jessica Blixseth is the sole member and manager of JTB, LLC and based upon the facts alleged in the complaint and the documents attached to the Basdekis declaration, the entity also appears to be an "insider" as defined by the statute. *See* N.R.S. § 112.150(7)(d). Additionally, Mr. Blixseth was the manager of Western Air and he likely retained control of the entity's assets after the transfer to either his wife or JTB, LLC. Dkt. # 3-9, p. 74.

Finally, there is no question that Mr. Blixseth and his related entities (including Desert Ranch) were being sued at the time of the transfer. Desert Ranch was the subject

---

interests of Washington and the laws or interests of another state before the court will engage in a conflict-of-laws analysis.").

[4] The court notes that additional factors may be relevant to this analysis, but finds that the Trust's likelihood of success on the factors listed above is sufficient to issue preliminary injunctive relief.

of an adversary proceeding in which the Trust sought to obtain an injunction prohibiting the very transfer that occurred here. The Montana Bankruptcy Court ultimately granted that injunction, but it was too late; Mr. Blixseth had already caused Desert Ranch to transfer Western Air's assets to his wife.

Although Jessica Blixseth may attempt to argue that she was a good faith transferee who took for value, that defense is unlikely to be successful. To be considered a good faith transferee, Mrs. Blixseth must demonstrate that she had an *objective* lack of knowledge of the fraudulent nature of the transfer. *Hayes v. Palm Seedlings Partners-A*, 916 F.2d 528, 535-36 (9th Cir. 1990). This will be difficult to establish in light of the many actions pending against her husband which allege claims of fraudulent transfer and the multiple media sources, which have reported on those actions throughout the past five years. Further, Mrs. Blixseth will have significant difficulty claiming ignorance of the actions of her husband and his related companies because she personally attended the trial in which a judgment was entered against him for $41 million for his breaches of fiduciary duty and fraudulent transfers. Dkt. # 3, ¶ 9.

Based upon these facts, the court finds that the trustee has a likelihood of success on the merits of the fraudulent transfer claim.

**B.  Irreparable Harm**

The trustee alleges that he has commenced and undertaken several actions to execute on and collect judgments against Mr. Blixseth in Montana, Nevada, and New York and, to date, has not discovered any assets that are available to satisfy those judgments. Dkt. # 3, ¶ 31. The yacht appears to be the only known tangible asset remaining to satisfy the judgments owed to Mr. Blixseth's creditors. Dkt. # 2, p. 15; Dkt. # 3, ¶ 31. These facts, in addition to Mr. Blixseth's own testimony (as manager of Western Air) that he believed Western Air would "probably sell" the yacht, demonstrate

that the Trust is likely to suffer irreparable harm absent the entry of a temporary restraining order. Dkt. # 3-9, p. 74.

**C. Balance of the Equities**

In balancing the equities, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Although it is possible that Jessica Blixseth and JTB, LLC are using the yacht and Western Air's other assets for some legitimate business purpose, they failed to file a response to this motion and based on the facts recited above, the court finds that possibility highly unlikely. The trustee has alleged a history of serious fraudulent activity by Mr. Blixseth and a strong likelihood that the transfer of Western Air's assets to Jessica Blixseth and JTB, LLC is just another effort by Mr. Blixseth to avoid paying the judgments entered against him. The court's conclusion is supported by the findings of the Montana Bankruptcy Court regarding Mr. Blixseth's history of disposing of assets, all to the detriment of the Trust and his creditors. *See In re Estate of Ferdinand Marcos*, 25 F.3d 1467, 1480 (9th Cir. 1994) ("We join the majority of circuits in concluding that a district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment.").

Accordingly, the court finds that the balance of equities tips in favor of the trustee.

**D. Public Interest**

Additionally, the public interest is served in temporarily enjoining defendants from disposing of the assets of Western Air. The public has an interest in preventing further dissipation of fraudulently transferred assets. *See, e.g.*, *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999) (noting the public interest in preserving the proceeds of a fraudulent scheme). The public also has an interest in the enforcement of

judgments.  *See State Farm Mutual Automobile Ins. Co. v. American Rehab & Physical Therapy, Inc.*, 376 F. App'x 182, 184 (3d Cir. 2010).

## IV. TEMPORARY RESTRAINING ORDER

For the reasons stated above, the court grants the trustee's motion and issues the following temporary restraining order.  Effective upon posting of a $1,000 bond[5], or equivalent security with the court, and upon service of this order:

1.  Defendants Jessica T. Blixseth and JTB, LLC, including any of their officers, agents, servants, employees, attorneys and other persons or entities in active concert or participation with them are enjoined from directly or indirectly:

> A.  Transferring, concealing, disposing of, assigning, hypothecating, encumbering, or otherwise dissipating the membership interests in, or any remaining assets of, Western Air & Water, LLC, including, without limitation, the yacht known as "The Piano Bar," and any and all proceeds, products, offspring, rents, or profits of such membership interests or assets (the "Subject Assets");
>
> B.  Merging, consolidating, reorganizing, dissolving, liquidating, or changing in any way the structure or ownership of Western Air & Water, LLC; or
>
> C.  Causing any entity owned or controlled by or affiliated with any of them, including any corporation, limited liability company, limited partnership, or trust, to transfer, conceal, dispose of, assign, hypothecate, encumber, or otherwise dissipate the Subject Assets or merge, consolidate,

---

[5] The trustee did not address the bond amount.  To the extent defendants believe a larger bond is necessary, they may file a motion with the court.  *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999) ("The district court is afforded wide discretion in setting the amount of the bond"); *Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000) (finding that the bond amount may be zero if there is no evidence the party will suffer damages from the injunction).

reorganize, dissolve, liquidate, or change in any way the structure or ownership of Western Air & Water, LLC, pending further order of this Court.

2. Defendants Jessica T. Blixseth and JTB, LLC shall, within ten (10) days after service of this Order upon them:

    A. Produce to the trustee an itemized list of the Subject Assets; and

    B. Complete unredacted copies of any and all documents evidencing the present ownership of the Subject Assets, including any and all documents evidencing their acquisition of the Subject Assets and current title or other recorded documents evidencing the ownership of "The Piano Bar" yacht.[6]

3. The temporary restraining order will become effective upon formal service of this order and will remain in effect pending further order of this court.

4. The defendants are ordered to show cause on or before November 6, 2014 why the court should not convert this temporary restraining order to a preliminary injunction.

Dated this 22nd day of October, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

---

[6] If defendants have any concerns regarding the disclosure of confidential information, they are directed to meet and confer with plaintiff to attempt to agree on an appropriate protective order, prior to seeking relief from the court.