HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN A GLASSER, AS TRUSTEE OF THE YELLOWSTONE CLUB LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>JESSICA T. BLIXSETH and JTB, LLC,<br><br>Defendants. | CASE NO. C14-1576 RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on plaintiff's motion for an order holding defendant Jessica T. Blixseth in contempt of court, granting a preliminary injunction, issuing a prejudgment writ of attachment, authorizing the filing of an amended complaint, and authorizing discovery. Dkt. # 35. Specifically, plaintiff asks this court to: (1) hold Mrs. Blixseth in contempt for conduct which occurred prior to this court's issuance of a restraining order, and as a coercive sanction, to issue an injunction prohibiting her from

selling, transferring or encumbering certain real property owned by her in this district, (2)
issue a prejudgment writ of attachment against that real property, (3) allow plaintiff to
amend the complaint to add Mrs. Blixseth's mother, Cheryl B. Ferguson, and her marital
community, and (4) allow plaintiff to conduct discovery prior to the stay imposed by
Federal Rule of Civil Procedure 26(d).  For the reasons stated below, the motion is
GRANTED IN PART AND DENIED IN PART.

## II. FACTUAL BACKGROUND

Plaintiff, the Trustee of the Yellowstone Club Liquidating Trust, filed the instant
action on October 14, 2014 seeking to set aside certain alleged fraudulent transfers of
assets that Timothy L. Blixseth made to his wife, defendant Jessica T. Blixseth ("Mrs.
Blixseth") and/or her limited liability company, defendant JTB, LLC ("JTB").  Dkt. # 1.
On that same day, plaintiff notified attorneys who had represented the Blixseths in
numerous other matters that plaintiff had commenced this action.  Dkt. # 2, p. 22.
Plaintiff also filed a motion for temporary restraining order ("TRO") and preliminary
injunction seeking to prevent any further transfer of the subject assets or their proceeds.
Dkt. # 2.  The court granted the TRO on October 22, 2014 and it became effective on
October 24, 2014.[1]  Among the assets plaintiff sought to freeze was the Piano Bar yacht,
which the court later learned Mrs. Blixseth had already sold for a net amount of $1.6
million.  Dkt. # 21, ¶ 10.

Coincidentally, on October 14, 2014 (the same day this action was filed), Mrs.
Blixseth initiated a series of wire transfers that caused the balance in her personal bank
account to go from approximately $1,065,571 to approximately $347,510.99 in one day.
Principal among these initial transfers was a $600,000 wire to Mrs. Blixseth's mother,

---

[1] The court's records wrongly indicated that the bond was posted on October 30,
2014.  Dkt. # 25, p. 4.  It appears that the bond was indeed posted on October 24, 2014
and the TRO became effective on that date.  *See* Dkt. # 46, p. 4.

Cheryl B. Ferguson.  The transfers continued for three more days and by October 17, 2014, just $35,821 remained in her account.  By the end of the month, the balance in Mrs. Blixseth's account was only $19,650.38.[2]  Dkt. # 35, p. 3; Dkt. #36, pp. 15-19.

Mrs. Blixseth was not formally served with process in this matter until October 22, 2014, due in part to circumstances described in the court's previous orders, which need not be repeated here.  *See* Dkt. # 25, pp. 5-7 (summarizing declarations of process servers who made multiple attempts to serve Mrs. Blixseth).  While it is certainly possible that she did not have any knowledge of this lawsuit on October 14, 2014, she never expressly states that in her declaration.  Dkt. # 41.  Her husband's long time attorney, Paul Brain, received notice of the action on that day, but despite having represented Mr. Blixseth in numerous other actions, he advised plaintiff's counsel on October 14, 2014 that he did not represent Mrs. Blixseth or JTB in *this* action, that he was not authorized to accept service on their behalf and that notice to him would not constitute notice to the Blixseths or JTB.  Dkt. # 20; Dkt. # 43, ¶ 2.  Mr. Brain has since appeared in this action on behalf of Mrs. Blixseth, JTB and the marital community of Mr. and Mrs. Blixseth.  Dkt # 33.

The record before the court does not contain any evidence of communications between Mr. Brain and Mrs. Blixseth on October 14th, nor does it contain any evidence which establishes that Mrs. Blixseth had actual knowledge of this action on October 14th.

---

[2] Plaintiff has not provided the court with a declaration explaining its calculations and the court's review of Mrs. Blixseth's bank records reveals slightly different numbers. Based upon the court's calculations, Mrs. Blixseth's account contained approximately $1,118,000.00 on October 14, 2014.  By October 17th that amount was reduced to approximately $94,000.00 and then further reduced to approximately $28,600.00.  The exact reduction in the account is irrelevant for purposes of this motion, as the point is simply that Mrs. Blixseth undertook a series of substantial withdrawals on the exact same day this suit was filed, and continued to make withdrawals in the days that followed.

1

## III. ANALYSIS

2

**A. Order of Contempt and Preliminary Injunction**

3

Plaintiff asks the court to invoke its inherent power to hold Mrs. Blixseth in

4

contempt and to order her to restore the amounts that she transferred out of her bank

5

account beginning on October 14, 2014.  As a coercive sanction, plaintiff also asks the

6

court to enjoin Mrs. Blixseth from transferring certain of her real property until she

7

restores that money.  Plaintiff does not contend that the transfers at issue violated the

8

TRO which became effective on October 24, 2014, but instead asks the court to punish

9

conduct which occurred prior to the entry of the TRO. [3]

10

The court does indeed have this power, but invoking it requires detailed factual

11

findings of bad faith conduct.  *See, e.g.*, *Chambers v. NASCO*, 501 U.S. 32, 50, 58

12

(1991).  "It is firmly established that "[t]he power to punish for contempts is inherent in

13

all courts." *Id.* at 44.  This power reaches both conduct before the court and that beyond

14

the court's confines, for "[t]he underlying concern that gave rise to the contempt power

15

was not ... merely the disruption of court proceedings.  Rather, it was disobedience to the

16

orders of the Judiciary, regardless of whether such disobedience interfered with the

17

conduct of trial." *Id.*  A court, however, must exercise caution in invoking its inherent

18

power. *Id.* at 50.  When there is bad-faith conduct in the course of litigation that could be

19

adequately sanctioned under the Rules, the court ordinarily should rely on the Rules

20

rather than the inherent power. *Id.*

21

Here, the court certainly finds Mrs. Blixseth's series of transfers extremely

22

suspicious.  On the exact day that this action was filed, she basically emptied her bank

23

account, which likely included the proceeds of the sale of the Piano Bar yacht – a fact

24

25

[3] The transfers made after October 24, 2014 (the day the TRO became effective)

26

may have been in contempt of this court's order, but plaintiff has not provided the court
with a declaration and sufficient evidence showing that these specific transfers involved

27

assets subject to the TRO.

ORDER- 4

1   alleged by plaintiff and not disputed by Mrs. Blixseth.  She continued to make transfers

2   for several days and by the end of the month, she had removed a little more than $1

3   million from her account.  Among these transfers was a $600,000 wire to her mother (an

4   "insider" as defined by fraudulent transfer laws).[4]  Although Mrs. Blixseth claims that

5   this transfer was for the benefit of American Bank, she fails to provide any evidence of

6   the American Bank account and fails to produce any documents showing that the

7   $600,000 was used to pay down a loan.  Dkt. # 41.

8          Despite what appear to be questionable transfers by Mrs. Blixseth, however,

9   plaintiff has failed to produce evidence that would allow the court to make the detailed

10  factual findings necessary to invoke its inherent contempt power.  Unlike the facts in

11  *Chambers*, here, there is no concrete evidence that Mrs. Blixseth had knowledge of this

12  lawsuit on October 14, 2014 and then intentionally dissipated her assets.  It may look that

13  way and it would be fair to suspect that she did, but at this time there is insufficient

14  evidence to allow the court to reach that conclusion.  Although her current attorney

15  received email notice on October 14th, he was not formally representing her at that time

16  and there is no evidence of communications between them on that day.  Absent such

17  evidence, the court will not invoke its inherent contempt power to punish conduct which

18  occurred prior to the entry of the court's restraining order.  *See Chambers*, 501 U.S. at 44

19  ("Because of their very potency, inherent powers must be exercised with restraint and

20  discretion.").

21         Accordingly, plaintiff's motion for order of contempt and preliminary injunction is

22  DENIED without prejudice to the re-filing of such a motion after the parties have had an

23  opportunity to conduct discovery.

24

25

26         [4] An "insider" is defined as "[a] relative of the debtor or of a general partner of the

27  debtor."  *See* N.R.S. § 112.150(7)(a)(1); RCW 19.40.011(7)(i)(A).

ORDER- 5

**B.  Prejudgment Writ of Attachment**

1

2          Plaintiff also asks this court to issue a prejudgment writ of attachment to certain

3   real estate Jessica Blixseth owns in this district.

4          A federal court applies the law of the state in which it is located to requests for

5   writs of attachment.  *See, e.g.*, Fed. R. Civ. P. 64; *Reebok Int'l, Ltd. v. Marnatech Enters.,*

6   *Inc.,* 970 F.2d 552, 558 (9th Cir. 1992) (discussing Rule 64).

7          The Washington writ of attachment statute provides:

8              [T]he court shall issue a writ of attachment only after prior

9              notice to defendant, given in the manner prescribed in
               subsections (4) and (5) of this section, with an opportunity for

10             a prior hearing at which the plaintiff shall establish the
               probable validity of the claim sued on and that there is

11             probable cause to believe that the alleged ground for
               attachment exists.

12

13   RCW 6.25.070 (emphasis added).

14         Plaintiff contends that it has already proved the probable validity of the claim sued

15   on and that defendants, by submitting an opposition to this motion, have had the

16   opportunity for a hearing.  The court disagrees.  Although plaintiff has proven the

17   probable validity of its claim (Dkt. # 25, pp. 8-10), under the attachment statute,

18   defendants are entitled to present oral testimony and to cross-examine witnesses in

19   support of any affirmative defenses.  *See*, *Rogoski v. Hammond*, 9 Wash. App. 500, 508

20   (1973) ("The debtor, as pointed out, has a right to produce evidence and arguments

21   thereon, including the right to confront and cross-examine witnesses when those are used.

22   If, therefore, a debtor demands the right to offer evidence rather than to be confined to

23   affidavits, he must be afforded that opportunity.").

24         Here, plaintiff has not requested a hearing and defendants have at least implied

25   that they do not want to be confined to affidavits.  Dkt. # 44, p. 7.  Accordingly,

26   plaintiff's motion is DENIED.

27

## C. Amendment of Complaint

Plaintiff seeks leave to amend the complaint to add Mrs. Blixseth's mother, Cheryl B. Ferguson, as a defendant in this matter, along with the marital community of Mrs. Ferguson and John Doe Ferguson.

Once a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Roth v. Garcia Marquez,* 942 F.2d 617, 628 (9th Cir. 1991); *United States v. Webb,* 655 F.2d 977, 979 (9th Cir. 1981). Further, the policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987).

In the proposed Second Amended Complaint, plaintiff alleges that Mrs. Ferguson and/or her marital community could be successor fraudulent transferees of the assets at issue in this action. Dkt. # 36, pp. 27-53. Defendants do not oppose this aspect of the motion. *See* Local Civ. R. 7(b)(2). Accordingly, the court GRANTS leave to amend the complaint.

## D. Permission to Conduct Discovery

Plaintiff also seeks to conduct discovery prior to the parties' Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), [unless] authorized by these rules, by stipulation, or by court order."). Although Rule 26(d) usually prohibits discovery prior to the parties' discovery conference, the court finds good cause to permit it in this instance. Defendants also do not oppose this aspect of the motion. *See* Local

1  Civ. R. 7(b)(2).  Accordingly, plaintiff's motion for leave to conduct discovery is

2  GRANTED.

3                                    **IV. CONCLUSION**

4          For the foregoing reasons, plaintiff's motion (Dkt. # 35) is GRANTED IN PART

5  AND DENIED IN PART.  Plaintiff's motions for order of contempt, preliminary

6  injunction, and writ of attachment are DENIED and plaintiff's motion for leave to amend

7  the complaint and to conduct discovery are GRANTED.  Plaintiff shall file its Second

8  Amended Complaint on or before February 24, 2015.

9          Dated this 17th day of February, 2015.

10

11

12  _____

13  The Honorable Richard A. Jones
    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

ORDER- 8