HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN A GLASSER, AS TRUSTEE OF THE YELLOWSTONE CLUB LIQUIDATING TRUST,

Plaintiff,

v.

JESSICA T. BLIXSETH et al.,

Defendants.

CASE NO. C14-1576 RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on defendant Cherrill B. Ferguson's motion for summary judgment. Dkt. # 62. For the reasons stated below, Ms. Ferguson's motion is DENIED.

## II. BACKGROUND

The facts of this case have been summarized in several previous orders. *See* Dkt. ## 13, 48, 99. In short, this matter involves the alleged fraudulent transfer of assets from Western Air & Water, LLC ("WAW"), an entity owned by Mr. Timothy Blixseth, to

ORDER- 1

JTB, LLC, an entity owned by Mr. Blixseth's wife, Jessica. The assets of WAW consisted of: (1) a Citation aircraft, (2) a 58 foot fishing boat – the "Piano Bar Too" and (3) a 156 foot yacht – the "Piano Bar." Dkt. # 52 at ¶ 46.

The instant motion relates to the proceeds of the sale of the Piano Bar yacht. The Piano Bar sold for $1,620,000 on September 14, 2014. Dkt. # 62, p. 3. It appears that Mrs. Blixseth deposited this amount into her personal Key Bank account and later, on October 14, 2014, transferred $600,000 of those proceeds to her mother, Ms. Ferguson. *Id.*, p. 3. According to Mrs. Blixseth, she planned to use those funds as collateral for a loan from American Bank. She claims that she transferred the funds to her mother, to be held by her temporarily, until the American Bank account could be set up. Dkt. # 41 ¶ 4.

On October 21, 2014, Ms. Ferguson transferred the $600,000 to American Bank. Dkt. #60. She has filed a declaration stating that she was acting at Jessica's direction and that she never had "any ownership interest in, or right to use or right to control the disposition of the funds" that had been transferred into her account. *Id.* Mrs. Blixseth and Ms. Ferguson contend that they operated pursuant to an oral agreement. (Reply) Dkt. # 72, p. 4.

The court later held a hearing in this matter related to plaintiff's motion for prejudgment writ of attachment on one of Mrs. Blixseth's homes. Dkt. # 111. At this hearing, Mrs. Blixseth testified regarding the $600,000 transfer of funds from herself to her mother. Dkt. # 116. The court learned that Mrs. Blixseth's "loan" from American Bank was actually a line of credit to herself, *i.e.*, she deposited $600,000 with American Bank and then "borrowed" the cash from herself. *See* (Kinsel Decl.) Dkt. # 91, pp. 16, 25, 28; Dkt. # 94, p. 4. (admitting this "unfortunate fact"). The court found that this pseudo "lien" on the funds strongly suggested that Mrs. Blixseth was attempting to place the $600,000 beyond the reach of creditors. *See* (Order) Dkt. # 116, p. 3 (finding that "[o]n its face, this pseudo loan transaction appears to be a violation of this court's injunction and a blatant attempt to hinder present and future creditors").

ORDER- 2

# III. ANALYSIS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

**A.   Ms. Ferguson's Potential Liability Under the UFTA**

Under the Uniform Fraudulent Transfer Act, a transfer is fraudulent if the debtor made the transfer with the actual intent to hinder, delay or defraud any creditor of the debtor. RCW § 19.40.041(a)(1).[1] In determining "actual intent" consideration may be

---

[1] The parties have failed to make any coherent arguments regarding the applicable law. To the extent Washington law applies, the court sees no conflict between RCW § 19.40.041 and N.R.S. § 112.180. *See Patton v. Cox*, 276 F. 3d 493, 495 (9th Cir. 2002) ("A federal court sitting in diversity applies the forum state's choice of law rules."); *see also Erwin v. Cotter Health Ctrs.*, 161 Wash. 2d 676, 692 (2007) ("When parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before the court will engage in a conflict-of-laws analysis.").

given to the following factors, among others: "(1) the transfer or obligation was to an insider, (2) the debtor retained possession or control of the property transferred after the transfer…(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit…." RCW § 19.40.041(b). Judgment may be entered against either (1) the <u>first transferee</u> of the fraudulently transferred asset or (2) "any <u>subsequent transferee</u> other than a good-faith transferee…who took for value or from any subsequent transferee." RCW § 19.40.081 (emphasis added).

Both parties cite *In re Mortgage Store, Inc.*, 773 F.3d 990 (9th Cir. 2014) and spend significant time discussing the "dominion" test. *In re Mortgage Store* is simply inapposite. As explained by the Ninth Circuit:

> Under § 550(a) [the Bankruptcy Code's fraudulent transfer provision], "[t]he trustee's right to recover from an *initial transferee is absolute*." A trustee may recover from a subsequent transferee—that is, any transferee not an initial transferee—but the *subsequent transferee will be allowed to assert affirmative defenses* that, if successful, will prevent recovery…Section 550(a) does not define the term "initial transferee." In the absence of a statutory definition, we apply the so-called "dominion test" to determine whether a party is the initial transferee… As the Seventh Circuit explained in the widely-cited case *Bonded Financial Services, Inc. v. European American Bank,* an individual will have dominion over a transfer if, for example, he is "free to invest the whole [amount] in lottery tickets or uranium stocks." The first party to establish dominion over the funds after they leave the transferor is the initial transferee; other transferees are *subsequent transferees*.

*In re Mortgage Store*, 773 F.3d at 994-95 (citations omitted)(emphasis added).

Thus, the "dominion" test is used to determine "initial transferee" status. Here, the record clearly demonstrates that Ms. Ferguson could not have been the initial transferee of the asset at issue – the Piano Bar yacht. Ms. Ferguson's receipt of the proceeds of the

sale occurred after a number of transfers from WAW then to JTB, LLC then to Mrs. Blixseth's personal bank account. Accordingly, the "dominion" test is irrelevant to Ms. Ferguson's potential liability under the UFTA.

Ms. Ferguson is plainly a subsequent transferee.[2] The only way for her to obtain summary judgment would be to establish that there are no disputed issues of fact with respect to her good faith affirmative defense. She has failed to do so. The only evidence she submitted in connection with this motion are self-serving declarations from herself and her daughter. At the time this motion was filed and fully-noted, the parties had not completed discovery and Ms. Ferguson was refusing to be deposed. *See* Dkt. # 146 (Order compelling Ms. Ferguson's attendance at deposition).

The court has expressly found that the circumstances surrounding the transfer of assets in this matter are extremely suspicious. (Order) Dkt. # 48. Indeed, plaintiffs have presented evidence that Ms. Ferguson may have assisted her daughter in attempting to avoid service of process in this matter (*see* Dkt. # 25) and possibly participated in her daughter's effort to set up a pseudo-lien on funds that were subject to an injunction issued by this court. Dkt. # 99.

Of course, Ms. Ferguson disputes these facts, but this factual dispute is exactly why summary judgment would be inappropriate.

---

[2] Courts routinely hold subsequent transferees liable under the UFTA. *See, e.g., Thompson v. Hanson*, 168 Wash. 2d 738, 745-46 (2009) (finding transferees, a judgment debtor's sole shareholder and the shareholder's wife who accepted a transfer from the debtor, were subject to personal liability under the UFTA); *see also Warfield v. Byron*, 436 F.3d 551, 557-58 (5th Cir. 2006) (holding that Washington's Uniform Fraudulent Transfer Act permits entry of judgment even without proof that the transferee knowingly accepted property and intended to assist the debtor in evading the creditor).

### IV. CONCLUSION

For all the foregoing reasons, Ms. Ferguson's motion for summary judgment is DENIED.

Dated this 2nd day of March, 2016.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court