HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN A GLASSER, AS TRUSTEE OF THE YELLOWSTONE CLUB LIQUIDATING TRUST,

Plaintiff,

v.

JESSICA T. BLIXSETH et al.,

Defendants.

CASE NO. C14-1576 RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on defendants' motion to dismiss (Dkt. # 168), plaintiff's motion for partial summary judgment (Dkt. # 169) and plaintiff's motion to sever Count I from Counts II and III (Dkt. # 206). As a preliminary matter, the court notes that non-party Desert Ranch LLLP has filed for bankruptcy protection and both parties agree that Counts II and III in this action belong to that bankruptcy estate. *See* Dkt. ## 204, 207, 227. Accordingly, to the extent either party seeks relief related to those Counts, their motions are DENIED.

For the reasons stated below, the court GRANTS plaintiff's motion to sever (Dkt. # 206) and sets this matter for trial on October 3, 2016. At the most recent telephonic hearing in this matter, the Desert Ranch LLLP Bankruptcy Trustee, Ms. Helen Frazer, advised the court that she "does not foresee intervening into this particular lawsuit," but that she would need a few months to determine exactly what course of action she intends to take with respect to the assets at issue in this case. Accordingly, the court has set a tentative date for trial in October in an effort to conserve judicial resources and to allow the parties and Ms. Frazer an opportunity to provide the court with any relevant updates in the bankruptcy proceedings that would impact the trial of Count I.

The court has also addressed the remaining portions of defendants' "motion to dismiss" (Dkt. # 168) and plaintiff's motion for partial summary judgment (Dkt. # 169). As explained below, both motions are DENIED.

## II. BACKGROUND

Beginning in the late 1990s, Timothy L. Blixseth began developing an exclusive and unique ski and golf resort for the ultra-rich in Montana under the name Yellowstone Mountain Club, LLC (the "Yellowstone Club").[1] (Compl.) Dkt. # 147, ¶ 14; Dkt. # 170, Ex. A at 2-3. As the sales of building lots and memberships began piling up, Mr. Blixseth, in 2005, caused the Yellowstone Club and its affiliated entities (collectively, the "Debtors") to borrow $375 million from Credit Suisse and a group of institutional lenders and to pledge all or substantially all of their assets to secure the loan. (Compl.) Dkt. # 147, ¶ 15; Dkt. # 170, Ex. A at 15-16. On the same day Credit Suisse disbursed the loan proceeds to the Debtors, Mr. Blixseth diverted $209 million of those proceeds into his personal accounts. (Compl.) Dkt. # 147, ¶ 16; Dkt. # 170, Ex. A at 19. In addition, Mr. Blixseth converted tens of millions of additional proceeds, assets, and properties for

---

[1] The facts of this case have been summarized in several previous orders as well. *See* Dkt. ## 13, 48, 99.

himself or his related entities during his tenure as the Yellowstone Club's sole manager. (Compl.) Dkt. # 147, ¶ 17; Dkt. # 170, Ex. A at 119-121.  All told, Mr. Blixseth is subject to claims against him totaling at least $286.4 million.  Dkt. # 170, Ex. A at 116 & 119.

An exhibit to Mr. Blixseth's 2008 Marital Settlement Agreement identified seventeen different litigation claims filed against Mr. Blixseth or his related entities.  Dkt. # 170, Ex. B.  The actions included at least two suits by Mr. Blixseth's co-investors in the Yellowstone Club, one by the former Tour de France champion, Greg LeMond, and others, and another by Michael Snow, both directly related to Mr. Blixseth's alleged misappropriation of the Credit Suisse loan proceeds.  Dkt. # 170, Exs. C and D.  The Montana Department of Revenue also asserted claims relating to the Credit Suisse proceeds.  Dkt. # 170, Ex. B.

In 2007, Mr. Blixseth secretly created Desert Ranch LLLP ("Desert Ranch"), a Nevada limited liability limited partnership to which he planned to transfer all of his personal assets.  (Compl.) Dkt. # 147, ¶ 18; Dkt. # 170, Ex. A at 52, 108-09; Ex. E.  Mr. Blixseth then transferred substantially all of his assets to Desert Ranch to place them beyond the reach of his existing creditors and beyond the reach of creditors in the Debtors' bankruptcy cases. (Compl.) Dkt. # 147, ¶ 18-19; Dkt. # 170, Ex. A at 52, 108-109.

The assets Blixseth transferred into the Desert Ranch structure included the subjects of the present litigation, namely all his membership interests in (a) Western Air & Water, LLC ("Western Air"), an Oregon limited liability corporation, which owned Blixseth's Citation private jet, 156-foot private yacht known as "The Piano Bar," and 58-foot "fishing" boat and (b) Kawish, LLC, a Washington LLC, which owned Mr. Blixseth's waterfront home in Medina, Washington.  (Compl.) Dkt. # 147, ¶¶ 12, 45; Dkt. # 170, Ex. I.

After the Debtors filed bankruptcy in November 2008, the creditors investigated and asserted, among other claims, fraudulent transfer claims against Mr. Blixseth in an

adversary proceeding seeking to set aside Mr. Blixseth's transfers of the Debtors' assets to himself and his related entities. (Compl.) Dkt. # 147, ¶ 21; Dkt. # 170, Ex. A at 56-58, 67-69. Eventually, the bankruptcy plan confirmed in the Debtors' Chapter 11 bankruptcy cases conveyed those claims to the plaintiff Trust for the purpose of pursuing those and other claims to recover the Debtors' properties and assets and distribute their proceeds to the Debtors' defrauded creditors. (Compl.) Dkt. # 147, ¶ 22; Dkt. # 170, Ex. A at 55-56.

When the Trust learned of Blixseth's wholesale asset transfers to Desert Ranch, it commenced a separate adversary proceeding against Desert Ranch and others seeking to set aside and recover those transfers as well. (Compl.) Dkt. # 147, ¶ 23; Dkt. # 170, Ex. J. After a trial, the USBC, District of Montana (the "Montana Bankruptcy Court"), in an August 16, 2010 memorandum of decision, rendered a decision against Blixseth in the first adversary proceeding. (Compl.) Dkt. # 147, ¶ 56; Dkt. # 170, Ex. A at 134-135. The Montana Bankruptcy Court concluded that Blixseth had caused the Yellowstone Club to transfer its assets to him with actual intent to hinder, delay, and defraud. (Compl.) Dkt. # 147, ¶ 56; Dkt. # 170, Ex. A at 102-109. It also concluded that he had breached his fiduciary duties to the Debtors. (Compl.) Dkt. # 147, ¶ 56; Dkt. # 170, Ex. A at 117-121.

After additional litigation, the Montana Bankruptcy Court entered final judgment in December 2012 against Blixseth in the approximate amount of $41 million. (Compl.) Dkt. # 147, ¶ 124; Dkt. # 170, Ex. K. Blixseth then appealed and the USDC, District of Montana (the "Montana District Court") affirmed the judgment on April 7, 2014. Dkt. # 170, Ex. L. Mr. Blixseth's further appeal to the 9th Circuit has been fully briefed and submitted as of February 25, 2016. *Blixseth v. Glasser (In re Yellowstone Mountain Club)*, Case No. 14-35438 (9th Cir.).

In addition to the $41 million judgment of the Montana Bankruptcy Court, the USDC, Central District of California (the "California District Court") entered judgment in favor of the Trust against Mr. Blixseth on June 24, 2014 in the amount of $219 million.

Dkt. # 170, Exs. M and N.  Blixseth appealed the California District Court's judgment to the Ninth Circuit. That appeal, too, has been fully briefed and submitted as of February 25, 2016.  *See Blixseth v. Glasser (In re Yellowstone Mountain Club, LLC)*, Case No. 14-56184 (9th Cir.).  The Desert Ranch fraudulent transfer action remains pending before the Montana Bankruptcy Court.  (Compl.) Dkt. # 147, ¶ 60.

In the summer of 2013, the Trust discovered that Blixseth had sold a $40 million resort, one of the properties he had taken out of the Yellowstone Club, in April 2011 in violation of an injunction order he had stipulated to in connection with yet another action the Trust had commenced against him to recover that fraudulently transferred asset. (Compl.) Dkt. # 147, ¶ 62, 63; Dkt. # 170, Ex. O-1.  The Montana District Court then entered an order of contempt against Mr. Blixseth on February 3, 2014.  Dkt. # 170, Ex. O-2.  In connection with that ongoing contempt proceeding, Mr. Blixseth has been jailed for his refusal or inability to account for the proceeds of the sale.  Dkt. # 170, Ex. P.  Mr. Blixseth remains incarcerated in the Cascade County Regional Jail in Great Falls, Montana pursuant to the April 20, 2015 order of incarceration.  Dkt. # 170, Ex. Q.

In addition to the contempt proceedings against Blixseth, the Trust also moved for an injunction in the Desert Ranch adversary proceeding on November 22, 2013 barring Blixseth and Desert Ranch from transferring any of their remaining assets.  Dkt. # 170, Ex. R.  In connection with that proceeding, Blixseth testified under oath in a deposition that he had caused Desert Ranch to convey Western Air and Kawish to his wife Jessica Blixseth in April 2013.  (Compl.) Dkt. # 147, ¶ 67; Dkt. # 170, Ex. S, 39 & 79.

The Blixseths have produced a single document, dated "effective" April 3, 2013, purporting to evidence the transfer of Kawish to Defendant JTB, LLC, a Washington limited liability company of which Jessica Blixseth appears to be the sole member and manager.  Dkt. # 170, Ex. T.  However filings with the Oregon Secretary of State and the Washington Secretary of State indicate that both Western Air and Kawish were transferred on or after December 13, 2013. (Compl.) Dkt. # 147, ¶¶ 68-70.  Mr. Blixseth

continued to serve as the manager of both Western Air and Kawish until at least February 27, 2014, despite their supposed transfer to Defendant JTB. (Compl.) Dkt. # 147, ¶ 75; Dkt. # 170, Ex. S at 40 & 74.

Since December 13, 2013, the Blixseths have sold all of the known assets of Western Air and Water. They sold their 58-foot fishing boat, the *Piano Bar Too*, on December 19, 2013, their Citation VI private jet on February 28, 2014, and their 156-foot yacht, the *Piano Bar*, on September 15, 2014. (Compl.) Dkt. # 147, ¶¶ 76-79; Dkt. # 170, Exs. U, V & W. The net proceeds of the sale of both the private jet and the yacht were transferred directly from the purchaser to Defendant Jessica Blixseth's personal bank account. Dkt. # 170, Exs. X (deposit of $47,035.98 on 2/28/14) and Y (deposit of $1,620,000 on 9/15/14).) Another Blixseth creditor foreclosed on and sold at an execution sale the Blixseths' Medina mansion on or after June 13, 2014. *See* Order, *395 Lampe, LLC v. Kawish, LLC*, No. 2:12-cv-01503-RAJ (W.D. Wash., April 8, 2015) [Doc 195], at 3.

On October 14, 2014, the date the Trust commenced this action, Jessica Blixseth still had approximately $1.065 million of the proceeds of sale of the *Piano Bar* in her personal bank account. Dkt. # 170, Ex. Z. Thereafter, Mrs. Blixseth transferred all of those assets out of that account, including $600,000 that she transferred to her mother, Defendant Cherrill Ferguson, on October 14, 2014. (Compl.) Dkt. # 147, ¶¶ 79, 83-85; Dkt. # 170 Exs. Z and AA. A week later, Cherrill Ferguson transferred $600,000 to an account in Jessica Blixseth's name at American Bank in Bozeman, Montana. Dkt. # 170, Ex. BB. Mrs. Blixseth then pledged the $600,000 in the account to American Bank to secure a loan in the amount of $600,000 to herself. Dkt. # 170, Ex. CC.

### III. ANALYSIS

**A.  Legal Standard**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

**B.   Cross-Motions for Summary Judgment**

First, the court notes that defendants' counsel has incorrectly titled his motion as a "motion to dismiss," when in fact he seeks summary judgment on behalf of his clients. This type of error is surprising in light of counsel's many years of experience as a litigator. This type of error also results in a waste of the court's time, confusion among the parties, and an inaccurate docket. Because the motion is based upon Rule 56, the court will construe defendants' motion as one for summary judgment and address both motions together.

Here, the only claim at issue is Count I. (Compl.) Dkt. # 147, ¶¶ 86-93. In Count I, plaintiff seeks to hold defendants liable as subsequent transferees. *Id.* To do so, plaintiff must show: (1) that the initial transfer of Western Air and Kawish from Mr. Blixseth to Desert Ranch was fraudulent, and (2) that the subsequent transfer of those same assets from Desert Ranch to defendants was also fraudulent. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 735 (9th Cir. BAP 2008)

(applying analogous bankruptcy provision); *Creditors Committee v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 742 (Bankr. S.D.N.Y. (2008) (finding that the party seeking to recover fraudulently transferred property "can sue the subsequent transferee in the first instance, and need prove only that the initial transfer was avoidable.").

There are two ways to show that a transfer was fraudulent. A transfer is fraudulent if the debtor made the transfer or incurred the obligation:

>  (1) With <u>actual intent</u> to hinder, delay, or defraud any creditor of the debtor; *or*
>
>  (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, <u>and</u> the debtor:
>
>  (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
>  (ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

If plaintiff seeks to show fraud under option (1) above (i.e., "actual intent" to defraud), consideration may be given, among other factors, to whether:

>  (1) The transfer or obligation was to an insider;
>
>  (2) The debtor retained possession or control of the property transferred after the transfer;
>
>  (3) The transfer or obligation was disclosed or concealed;
>
>  (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
>  (5) The transfer was of substantially all the debtor's assets;

> (6) The debtor absconded;
>
> (7) The debtor removed or concealed assets;
>
> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
> (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
> (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
> (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

R.C.W. § 19.14.041.[2]

The plaintiff must make this showing as to each transfer at issue in this case (*e.g.*, the transfer from Mr. Blixseth to Desert Ranch, the subsequent transfer to JTB LLC, the subsequent transfer to Mrs. Blixseth, the subsequent transfer to Mrs. Ferguson, and the subsequent transfer from Mrs. Ferguson to American Bank/Mrs. Blixseth).

If the plaintiff successfully shows that each of these transfers was fraudulent, then defendants can only avoid liability by showing that they were good faith transferees. Each defendant will have the burden of proving this

---

[2] To this day neither party has addressed the choice-of-law in this case. Because this court's jurisdiction is based on diversity of citizenship, the court will apply Washington law. The court has reviewed Nevada's fraudulent transfer law and Montana's fraudulent transfer law and sees no conflict with RCW § 19.40.041. *See Patton v. Cox*, 276 F. 3d 493, 495 (9th Cir. 2002) ("A federal court sitting in diversity applies the forum state's choice of law rules."); *see also Erwin v. Cotter Health Ctrs.*, 161 Wash. 2d 676, 692 (2007) ("When parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before the court will engage in a conflict-of-laws analysis.")

affirmative defense. R.C.W. § 19.40.081. This is an objective standard. *See Hayes v. Palm Seedlings*, 916 F.2d 528 (9th Cir. 1990) ("[C]ourts look to what the transferee objectively knew or should have known in questions of good faith, rather than examining what the transferee actually knew from a subjective standpoint.") (internal quotations omitted).

In the instant case, the court has reviewed the briefs, declarations, and supporting evidence and finds that plaintiff has presented significant and persuasive evidence in support of his claims of fraudulent transfer. However, credibility determinations and the weighing of the evidence are jury functions, not those of a judge. *Anderson*, 477 U.S. at 255. Based upon the record, and especially with respect to the good faith defense, the court finds that issues of fact remain and those issues should be decided by a jury. *See, e.g.*, Fed. R. Civ. P. 56, Committee Notes on Rules-2010 Amendment, Subdivision (g) ("[The court] may properly decide that the cost of determining whether some potential fact disputes may be eliminated by summary disposition is greater than the cost of resolving those disputes by other means, including trial."); *see also Powell v. Radkins*, 506 F.2d 763, 765 (5th Cir. 1975) ("A court, in its discretion in shaping the case for trial, may deny summary judgment as to portions of the case that are ripe therfor, for the purpose of achieving a more orderly or expeditious handling of the entire litigation."). Accordingly, the cross-motions for summary judgment are DENIED.

**C.    Motion to Sever Count I**

As the court has already stated, this matter will proceed to trial as to Count I. The Federal Rules of Civil Procedure authorize the Court either upon a motion or on its own at any time and on just terms to "sever any claim against a party." Fed. R. Civ. P. 21. Deciding whether to sever a party or claim lies wholly within the trial court's sound

discretion and is subject to appellate review only for clear abuse. *See Coughlin v. Rogers*, 130 F.23d 1348, 1350 (9th Cir. 1997); *Garber v. Randell*, 477 F.2d 711, 714 (2d Cir. 1973). In exercising their broad discretionary "power to sever claims and order separate trials . . ., [the courts must] balance the factors of benefit and prejudice that will result from the alternative courses." *Garber*, 477 F.2d at 714.

Here, the parties agree that Counts II and III belong to the Desert Ranch bankruptcy estate. Thus, the only option is proceed as to Count I. Defendants, however, argue that Desert Ranch is an indispensible party and allowing this matter to proceed at all would violate the automatic stay. Defendants further argue that this litigation should be stayed because it is duplicative of litigation pending in Montana against Desert Ranch. The court disagrees.

A creditor asserting claims to recover fraudulently transferred property has a choice and may seek judgment "against *either* (1) the *first transferee* of the fraudulently transferred asset (in this case Desert Ranch) or (2) 'any *subsequent transferee* other than a good-faith transferee . . . who took value from any subsequent transferee." Dkt. # 197, citing RCW § 19.40.081 (emphasis added). The Ninth Circuit Bankruptcy Appellate Panel has held under the analogous Bankruptcy Code fraudulent transfer provision that the party seeking a judgment against a subsequent transferee "is not required to avoid the initial transfer from the initial transferee before seeking recovery from subsequent transferees." *Woods & Erickson, LLP v. Leonard (In re AVI, Inc.*, 389 B.R. 721, 735 (9th Cir. BAP 2008). Indeed, at least one court has expressly held that in any action against a subsequent transferee, the initial transferee is neither a necessary party nor required to be joined under Federal Rule of Civil Procedure 19. *See In re M. Fabrikan*, 394 B.R. 721 at 744 ("the plaintiff can obtain complete relief by recovering a money judgment against the [subsequent transferees] without regard to the [initial transferees]"). Accordingly, the court can grant complete relief to plaintiff without joining Desert Ranch.

Additionally, to the extent that defendants argue that this action is duplicative of the AP 15 litigation pending in Montana and that this matter should be stayed pending resolution of that matter, the court disagrees. No judgment has been entered against Desert Ranch in AP 15 and there is simply no reason to delay this matter further. Discovery is complete and all pretrial deadlines have passed. This matter is ready for trial.

Further, at the request of the court, Ms. Frazer, the Desert Ranch bankruptcy trustee, participated in a telephonic conference along with the parties on June 3, 2016. Ms. Frazer is, thus, clearly aware of this suit. Dkt. # 228. After learning the status of the proceedings and hearing the arguments of counsel, Ms. Frazer advised the court that she "does not foresee intervening into this particular lawsuit."

## IV. CONCLUSION

For all the foregoing reasons, the parties' cross- motions for summary judgment (Dkt. ## 168, 169) are DENIED and plaintiff's motion to sever Count I is GRANTED (Dkt. # 206). This matter is set for trial on October 3, 2016. The parties are encouraged to contact the court's deputy clerk, Ms. Victoria Ericksen, by email or telephone should there be any updates in the Desert Ranch bankruptcy proceeding that would impact this court's trial of Count I. Plaintiff is directed to serve a copy of this order on Ms. Frazer by email transmission.

Dated this 7th day of June, 2016.

The Honorable Richard A. Jones
United States District Judge